Would you call the next case please? Case number 08-1669, Peoples v. Mario Villa Good morning everybody. When you gather your things, if you'd come and tell us who you are and who you represent please. May it please the court, my name is Jed Stone on behalf of Mario Villa. Good morning. Good morning. Assistant State's Attorney Mary Bowen on behalf of the people. Good morning. Good morning. Each of you know that you have 15 minutes to speak to your side of the appeal and you probably want to reserve some time. If I could reserve three minutes. That's fine. Great. And you can begin when you're ready. Thank you. May it please the court. This case is not about whether the state may use yet-to-be-tried cases as modus operandi evidence at the trial of Mario Villa. It can. Nor is this case about whether the state can use yet-to-be-tried cases in aggravation at sentencing. It may. This case asks the question, should the state be permitted to use evidence of yet-to-be-tried cases in aggravation at sentencing and as modus operandi evidence and then again be permitted to try the case? But does it really trigger double jeopardy? That's the question. Well, we believe it. Has jeopardy been triggered here? I think that's the question we all are asking. We believe it has. And the origin. When did jeopardy attach? Yeah, when did jeopardy attach? Jeopardy attached when the victim of the yet-to-be-tried charge testified and the judge relied upon that testimony to enhance the sentence of Mr. Villa. In the first case, though. In the first case. It's not in the case in which the person has testified. I mean, it's not as to that victim who testified. The evidence of that victim was used to enhance the sentence in the first case. Okay, so you want us to write, because we've got to figure out how to write it. It sounds like you want us to say when the victim of another case testified. You've got two points in time, so I can't figure it out. It sounds as if you want us to write when the judge sentenced in the first case this defendant, Mr. Villa, relying on testimony from a yet-to-be-tried case. Correct. That jeopardy attached in the yet-to-be-tried case. That is correct. That is wild. The origin of our thought on that was in a dissent by Justice Douglas in Chiuchi v. Illinois. There, Douglas wrote, by using the same evidence in multiple trials, the state continued its relentless prosecutions until it got the result that it wanted. That's what happened here. So he's saying it's unfair. He's saying it violates due process, 14th Amendment due process, because it's a Fifth Amendment violation of twice jeopardy. And we're saying it violates the Fifth and Fourteenth Amendments as well as the parallel provisions of the Illinois Constitution. It's really a sentencing issue for you, isn't it? I mean, it sounds as if what you're really saying is, you know, my guy got a lot of time on the first case, and he wouldn't have gotten a lot of time if these people hadn't testified in aggravation. And so you shouldn't try on the other cases. Mr. V, I got a hundred years on the first case, a hundred years on the second case, a hundred years on the third case, all to run consecutive to each other, and all based upon evidence from the tried cases and the yet-to-be-tried cases. Had this been ---- This is premature, I guess, is what we're saying. You know, we have no idea what will happen when the state goes to trial on these yet-to-be-tried cases. And it's premature because jeopardy hasn't attached. Well, we think jeopardy attached when Judge Porter sentenced the trial judge, sentenced Mr. Villa in the first case using the evidence of the yet-to-be-tried cases as aggravation. Had this been a football game, we would have expected a referee to throw out a flag saying unnecessary roughness. Had this been a soccer game, we would have expected a yellow card. There is a limit to the power of the prosecution to prosecute. And in this case, we believe that they used these successive prosecutions to pile it on. But you realize we're an intermediate appellate court, and we can't make rules. So even if we were to agree with you, we've got to follow Supreme Court precedent, which does not agree with you. So maybe ---- Just yesterday, the United States Supreme Court announced a new rule on custodial interrogations. Just yesterday, Justice Scalia, who until yesterday I thought abhorred bright-line rules that were judge-created, created a 14-day rule saying that the police could come back in question after 14 days after the invocation of a right to counsel. A radical change, in my view, of the laws that existed before yesterday. Appellate courts, I'm told, do that. I understand you're an intermediate appellate court. I also understand that Mr. Villa had the right to raise this issue in the trial court, and I had the duty to raise it on his behalf. I'm standing before you today as the trial lawyer who raised the issue. And if, God forbid, you disagree with me, and I understand that I'm about to hear good reasons why you may disagree with me, there are courts above that may change the law. But if I don't raise it here, it's waived forever. So here I am saying ---- I don't think that's true. I mean, I think, you know, you demand trial, and the minute they start moving on that next case, you say stop the presses, and you raise your double jeopardy issue then. That's ---- I mean, I don't think it's lost. I think it, you know, obviously what I say makes no difference unless people vote with me. But it's probably been mature. No, I'm confused. You can raise it here, but you really raise it when they start swearing those witnesses for the next case. Well, that's what we did do. I know that. But the problem is that you've got a situation here in which you don't know what's going to happen in those yet-to-be-tried cases. You don't know. And that's why the law permits an interlocutory appeal when double jeopardy issues are raised, because we shouldn't have to go through a trial of Lawrence C. or Kelly K. or Shelley R., all of whom were used as yet-to-be-tried aggravation and modus operandi evidence at trial number one. We shouldn't have to go through a trial because jeopardy attaches once Judge Porter used that evidence to aggravate the sentence, once a fair-minded referee would have thrown a red flag or drawn a yellow card. I just want to know what you want us to write. You want us to write that jeopardy attaches in case number two at a point in time in case number one. That's what you want us to say, right? When the evidence was presented. I'm just saying as a big picture, you want us to say that jeopardy attaches in case number two over there, yet-to-be-tried at some point in time in case number one. Right. By using the same evidence in multiple trials, the State continued its relentless prosecutions until it got the results it wanted. That's your big point. That is my argument. That's it. And we're trying to figure out how you got there. We know how you got there. We're just figuring out if anybody else has ever gotten there before. It's very creative. I think it's novel. And I urge you to struggle with its issue. We're feeling our pain. I feel your pain. That's why I'm asking you to come up here. Tell us what this means. It's my pleasure to be here, and unless there are any other questions, I'll be happy to wait for the exploration and rebuttal. I think we admire ingenuity. We admire ingenuity. We do. I mean, you're an advocate. You have to do what you think is the appropriate thing for your client. Thanks be to God people do that. Thank you. It's an important thing. And now we're going to hear from somebody else who has strong opinions on it. Good morning once again. Mary Boland on behalf of the people. I made a jurisdictional argument in a motion to dismiss, and then I made another. I raised it again in the brief. And the reason is because under no set of circumstances does the defendant have a 604F basis for raising this, beside the label he puts on it. He does put a label on it. But beyond the label, it simply doesn't meet any of the elements of a 604F appeal, which requires him to make a double jeopardy claim. And obviously you have a duty to look at your own jurisdiction. You're going to do that. But on the merits, double jeopardy protects against a couple of things. It protects against a second prosecution for the same offense after either an acquittal or conviction, or it protects against multiple punishments for the same offense. Now, the defendant in his argument heading states that he's examining the issue of aggravation. But if you read the brief, he also complains that it's fundamentally unfair to prosecute separate offenses at the trial level. So I've responded to both of those issues. With regard to the trial level, Emily's case is the case that he's identifying as case number one. And Emily's case resulted in a conviction. So obviously we're not talking about same offense, acquittal, prom. We're talking about same offense, conviction, prom. But each sexual offense in this case is a separate case. Emily is separate from Warren, who's separate from Kelly, who's separate from Shelley. Each one was sexually assaulted by this defendant on different dates at different times. The elements of these charges for which the defendant was convicted in Emily's case related to the crimes committed by the defendant to Emily. So to prove Emily's case, we put on the testimony of Emily, an ER physician, the nurse, four Chicago police detectives, a police officer, an evidence technician, a criminologist, a DNA expert, forensic scientist, forensic biologist, and a former ASA, all to prove beyond a reasonable doubt crimes against Emily. We also used and sought permission from the court to introduce other crimes' evidence through Kelly and Warren. And it was for three purposes, for modus operandi, for identity, and or for propensity. Now, the other crimes' evidence provided corroboration for Emily's testimony that the defendant was her offender. Emily was awakened in the middle of the night. It was about 3.30 in the morning. She was sleeping in her apartment. The defendant came in and in the darkness put a pillow over her face, nearly suffocating her. And then when she complied, continued to sexually assault her, forced her to take a shower, and then fled. So we've read all that. We've read all that. May I just kind of go to the? It does seem like this is kind of turned on its head. I mean, perhaps it used to be that the state would try its case and then try the next one and keep going, and then on the last one, you know, really rocket the guy to the moon. You know, because then you've got all these priors, and now you can just keep charging or just, you know. But this seems, it does seem rather odd that the judge, you know, the guy got all these 100 years on the first one. I mean, obviously I'm not making sense to you, but I'm just saying in terms of being an old public defender, I'm trying to figure out why you did it this way, which is not part of the record. But, you know, in the old days, you know, get what you could from somebody, and then on your other cases, you step up and say, we're going to dismiss these pursuant to this, and if it's overturned on appeal, we're going to reinstate these cases. And then we're done. We go home. Or you try your, you keep trying them in succession so that you can get more and more time on the person so it all runs. Well, let me explain. It doesn't seem here that that was done. Now, obviously that's not my business, but I'm wondering why we're doing appeals like this if there's something that could, you know, obviate. So think about, think about the state's case, even though you were a former public defender. Think about the state's case for a minute now. I did think about the state's case. We have, we're 3.30 in the morning. We have a victim who's awakened in the middle of the night. No, that's not my point. My point is the machinations of why are we doing an appeal like this? We've never seen these kind of things. You know, you just, well, state usually steps up and says, based upon the prior sentences in this case, Your Honor, we're going to dismiss 2, 3, and 4, and we're going to nally-pross those. This case is overturned on appeal. We're going to reinstate those cases. And then you wait that one out. Or you try the second one. But you don't pile it on the first one. You pile it on the last one. Well, actually, you've got to understand what we're looking at here. We've got DNA evidence in this case. That's what I was talking about with all the different witnesses. But in a DNA evidence case, what we get now are defenses that say consent. It's the middle of the night. Who else would she be having sex with? Me. It's 3.30 in the morning. It's 3.30 in the morning. It's a stranger. She doesn't know who this is. She is awoke. A pillow is immediately put over her face. She's not sure. We have Lauren. We have Kelly experiencing the same things. Basically the same. 3 o'clock in the morning, awakened, and immediately attacked, almost suffocated. So it's just your translation. You're going to pile it on the first case. We have to. We may make a decision. Right. Because we don't know. I mean, we have cases where you would think you would win them. And then the jury is like, well, we're not sure about the identification. We have DNA, but a claim of consent. And so we've got to do what is appropriate and allowable. And we did exactly that here. And there's no double jeopardy issue with regard to it. And in terms of his sentence, when we get to talking about his sentence, so in terms of the trial, there is no double jeopardy issue with regard to the trial. We introduced it for proper purposes. There was a limiting instruction before each witness testifying, Lauren and Kelly, that you are to consider it only for these three purposes. At the close of the case, there's a limiting instruction given to the jury that says, you're only to consider it for these purposes, identification, modus operandi, and or propensity. And so you're limited to do that. And all of those things together mean that what he was convicted of in Emily's case is what he did to Emily. And that corroborative evidence went to her identification, went to his signature pattern. And all of those things were proper. Now, when you look at the aggravation of the case, we don't have multiple punishments for the same offenses here. The sole case that he cites is the case of Bankhead. And Bankhead is actually consistent with the people. And the defendant simply says, we don't like Bankhead. We think Bankhead didn't analyze the case sufficiently. In Bankhead, the defendant pled guilty to theft. And then he was charged with an unrelated burglary. And the court used that pending charge in his theft sentence to aggravate his sentence and said, I'm going to give you a sentence of periodic imprisonment because of this pending burglary charge. And he was sentenced. There was no double jeopardy violation in that case because a trial court has the right to consider the complete criminal history. And when you're asking me about this particular case, Emily's victim impact statement was introduced. But most importantly, perhaps, was the defendant's long record of prior convictions. He has a Texas burglary, another assault, another burglary, a battery, a solicitation of a sexual act, window peeping, resisting arrest, and criminal trespass of property all in his background that was probably before the court. In addition, Chicago police officer Collins testified that when he interviewed the defendant, the defendant said he had so many attacks on women that he couldn't remember the addresses or dates of those attacks. But we probably wouldn't be here if, I mean, I'm just saying we probably would not be here if the sentence, the sentencing hearing in this case was postponed until after the trials on the other cases. But each individual victim is entitled to a trial and the people have a responsibility. You could have tried the cases and not sentenced the guy until you got all the convictions you wanted and then done the sentencings all together. Well, ultimately. And then you take totally away his complaint on appeal. I'm sure he would have appealed. I got all the other appeals, too. So there are appeals regardless of whether. You try one case and then you say, okay, we're going to try the other one and see where we're going here. I don't want to continue the sentencing on the first case. And you just keep pushing the sentencing back. You get all your convictions and line them up. You do the sentencing back to back and then there's nothing on appeal. I mean, I'm just kind of puzzled why this was all done this particular way, but that's not my issue. It's not. It's just I'm an old trial lawyer going, why would you do it this way? One of the cases that I cited to you was the Cocorales case. It's a Seventh Circuit case. And Judge Easterbrook said in that case, if you remember, it was a defendant who had killed as many as 18 women. He had confessed to killing 18 women in a very sadistic way. And he had claimed a double jeopardy violation. And in that case, the court said the double jeopardy clause does not prevent a state from selecting a penalty independently for each crime a defendant commits. There's no cap on the total punishment for the extra crimes. Each additional crime creates a fresh exposure to punishment. And there's extra deterrence for extra offenses. At some point, the defendant will effectively be sentenced, as is being raised in some of the other appeals, not related to Lauren or Kelly or Shelley's cases, who have not gone to trial. But this defendant committed a series of rapes over the course of years in Chicago. And he continued his conduct. And eventually, he will have a sentence that will effectively be a natural life sentence through a period of years. But this court will look at each of those sentences independently in each of the appeals. And each court will determine whether we produced sufficient evidence to find him guilty, whether all of the evidence was properly admitted, and whether that sentence is proper. So before this court is simply a case that says, we don't think the state should go forward on these individual cases and try him for these individual cases. We don't even know what the sentences are going to be or whether a jury is going to find him guilty. We just don't think the state should be able to do it because they've got enough. Well, the answer is Illinois legislature determines what is an independent punishment. And the Illinois legislature said for each separate sexual assault that you commit, with the violence and the level that you've committed, the court is entitled to sentence you. And in this case, the court had a tremendous long criminal history, as well as other aggravating factors in addition to Shelley's testimony. So these sentences are absolutely correct. They're consecutive because the Illinois legislature has decided that these sentences should be consecutive. So what you're looking at is a 30-year sentence for each of his aggravated criminal sexual assaults. The defendant would like to aggregate it. But in effect, it is several separate discrete sentences. And all of these sentences are proper. There's simply no double jeopardy violation here, much less an implication to the double jeopardy jurisprudence. So I'd ask this court to look at its jurisdiction carefully, as I know it will, and I would ask this court to affirm the trial court's denial of the defendant's motion to dismiss his cases on the basis of double jeopardy in each of these consolidated appeals. Thank you. I think the Coccarella case is in the opposite. I don't think it helps us find an answer to the question here. Justice O'Brien, you asked, why did they do it that way? Well, it's just me thinking out loud. Why are they doing it this way? If I were running it, I wouldn't do it that way. But that's not part of the record, and I'm just talking about it. And we urge them not to do it that way. But they're the prosecutors. They get to pick how they want to do it. Mr. Villa was labeled. He can be punished for each act. Absolutely. He can be punished for each act. Mr. Villa was dubbed by the Tribune the North Side Rapist. His victims were North Side white women. And I think that answers the court's question, why did it happen that way? Had he been the bus stop rapist and raped women on the south side of Chicago? That's not the reason I was asking. I'm looking at it as if I were the prosecutor and I wanted to, you know, send somebody away, how can I try these in a way? Because your argument is, look, you know, it sounds as if you're saying it's really a proportionality argument. You know, okay, put them into M.O., but let's, you know, putting them in on the sentencing too is more than, and that's why you're here. I would ask you not to be so quick to dismiss the difference between the bus stop rapist and the North Side Rapist because it's deeply troubling to this lawyer, as I hope it would be to any fair-minded person. But the real issue in this case is, what does it mean that you may not be punished multiple punishments for the same offense? What does that phrase mean? And I submit to the court that it means that when Lauren Cheek and Shelley Reardon and those, when the women who were victims in the yet-to-be-tried cases testified at the case on trial and the judge heard their testimony and relied upon it, that he was in fact imposing a punishment for that offense, the yet-to-be-tried offenses. And if the state were permitted to try the yet-to-be-tried cases, multiple punishments would be imposed for that offense. That's our position. It's fundamentally unfair. It does violence to the Fourteenth and Fifth Amendment and the parallel provisions of the Illinois State Constitution. And Justice Douglas, in 1958, I think, in Chiuchi v. Illinois, was pressured when he said, quote, by using the same evidence in multiple trials, the state continued its relentless prosecutions until it got the result that it wanted. That seems wrong. We hope you agree. Thanks for your time. We'll take the case under advisement. We're adjourned today. Thank you.